IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM SAMUEL MCLEAN, JR., | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:14-CV-02298 |
| | : | |
| vs. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | (Judge Rambo) |
| | : | |
| Defendant | : | |

**MEMORANDUM**

**Background**

> On December 12, 2014, William Samuel McLean, Jr., an inmate confined at the Federal Correctional Institution at Schuylkill, Minersville, Pennsylvania ("FCI-Schuylkill")[1] filed this action against the Federal Bureau of Prisons ("BOP") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671.[2] Doc. 1,

_____

1. McLean is presently confined at the Federal Correctional Institution, Pekin, Illinois ("FCI-Pekin").

2. The FTCA provides a remedy in damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of [the United States] while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28

(continued...)

Complaint.  Included in the complaint was a "motion for time to file an amended complaint." Id.  On December 4, 2014, the Clerk of Court sent McLean an Administrative Order directing that within thirty (30) days he pay the filing fee, or file an application to proceed in forma pauperis and an authorization form to have funds deducted from his prison account. Doc. 4.  On December 12, 2014, McLean filed an application to proceed in forma pauperis and the authorization form. Docs. 5 and 6.  Also, on December 12, 2014, an Administrative Order was sent to the Warden at FCI-Schuylkill directing him to commence deducting the filing fee from McLean's prison account. Doc. 7. On December 16, 2014, the Court granted McLean's application to proceed in forma pauperis. Doc. 9.

_____

2.  (...continued)
U.S.C. § 1346(b)(1).  With respect to negligence or wrongful acts or omissions the FTCA excludes several types of claims, including the intentional torts of assault, battery, false imprisonment, false arrest with exception of acts or omissions of investigative or law enforcement officers of the United States. 28 U.S.C. § 2680. "Investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

Defendant waived service of the complaint and on February 12, 2015, filed a motion for extension of time to file an answer. Docs. 10, 14 and 17.  By order of February 18, 2015, Defendant was granted an extension of time until May 20, 2015, to file an answer. Doc. 18.  On February 26, 2015, McLean filed an amended complaint substituting the United States as the Defendant along with a motion to serve the amended complaint. Docs. 20 and 21.  By order of April 10, 2015, the motion to serve the amended complaint was granted, the Federal Bureau of Prisons was terminated as a Defendant, and the United States of America was added as the sole Defendant in this action. Doc. 25.

The amended complaint and attachments thereto reveal that McLean alleges that when he arrived at FCI-Schuylkill on December 5, 2011, that he and the other newly arrived inmates were informed by Tamara Blaschak, an emergency medical technician, that they would all receive a skin test for tuberculosis, i.e., a purified protein derivative (PPD) test.[3]  Doc. 20, Amended

---

3.  The Centers for Disease Control and Prevention

(continued...)

Complaint.  McLean claims that he informed EMT Blaschak that he previously had TB and also had a PPD test in 1994 and that those facts were documented in his medical records maintained by the BOP.[4]  Id.  McLean alleges that

_____

3.   (...continued)
describes how the test is administered as follows: "The [tuberculin skin test] is performed by injecting 0.1 ml of tuberculin purified protein derivative (PPD) into the inner surface of the forearm. The injection should be made with a tuberculin syringe, with the needle bevel facing upward. The TST is an intradermal injection. When placed correctly, the injection should produce a pale elevation of the skin (a wheal) 6 to 10 mm in diameter." Fact Sheets, Tuberculin Skin Testing, Centers for Disease Control and Prevention, http://www.cdc.gov/tb/publications/factsheets/testing/s skintesting.htm (Last accessed February 5, 2016).  The test is assessed within 48 to 72 hours by measuring in millimeters "the induration (palpable, raised, hardened area of swelling)." Id.  The interpretation of the test depends on the measurement in millimeters of the induration and the person's risk of being infected. Id. With respect to "residents and employees of high risk congregate settings" such as penal institutions "an induration of 10 or more millimeters is considered positive[.]" Id.

4.   McLean contends that he received the 1994 TB skin test while confined at the United States Penitentiary, Leavenworth, Kansas. Doc. 23, Exhibits to Amended Complaint, at 5. At that time McLean alleges that he informed the BOP that he had a history of TB but they still performed the test and that he had a bad reaction to the test but it did not leave a scar on his left forearm. Id.  Up until his transfer to FCI-Schuylkill on December 5,2011, he contends that the BOP monitored him for TB by way of chest x-rays. Id.

4

he objected to the administration of the PPD test and that EMT Blaschak informed him and the other inmates that the test was mandatory and that if he refused he would be taken immediately to a special housing unit cell, strapped down and given the PPD test.[5] Id. at 22-23.  In light of those threats, McLean claims he submitted to the test which resulted in an allergic reaction within a short period of time and left a permanent scar on his left forearm. Id. at 11.  McLean also alleges that he suffered damage to the muscle of the left forearm and still suffers pain from the administration of the test. Id.  McLean contends that EMT Blaschak knew that his medical records showed that administering the test to him was "contraindicated." Id. at 4 and 11.  McLean contends that EMT Blaschak was negligent by administering the test and committed an

_____

5.  28 C.F.R. § 549.12(b)(4) states that "[a]n inmate who refuses TB screening may be subject to an incident report for refusing to obey an order. If an inmate refuses skin testing, and there is no contraindication to tuberculin skin testing, then, institution medical staff will test the inmate involuntarily."

assault and battery on his person.[6] Id. 1-6. He also contends that the clinical director, Ellen Mace-Leibson, D.O., and Health Services Administrator McKinney were negligent for issuing standing orders that all newly arrived inmates receive a PPD test. Id.  As relief, McLean requests an award of damages in the amount of $10,000.00. Id. at 6.

On June 9, 2015, the United States filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b), or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. Doc. 27. A statement of material facts and a brief in support of the motion were filed on June 23, 2015. Docs. 29 and 30.  The United States argues that McLean's amended complaint should be dismissed because he does not have a medical expert and failed to timely file a certificate of merit as required by Pennsylvania law, or in the alternative, summary judgment should be granted because the undisputed record

---

6. To the extent that McLean alleges that he was subjected to an assault and battery those claims, intentional torts, are barred by 28 U.S.C. § 2680(h) and will be dismissed.

demonstrates the United States was not negligent in treating McLean.  After being granted several extensions of time, on January 22, 2016, McLean filed a brief in opposition, a response to the statement of material facts filed by the United States and evidentiary materials. Docs. 55, 56, 57 and 58.  The United States' motion became ripe for disposition on February 8, 2016, when it elected not to file a reply brief.  For the reasons set forth below, the motion to dismiss and/or for summary judgment will be denied.

**Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim,"

Fed.R.Civ.P. 8(a)(2), and detailed factual allegations
are not required, Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929
(2007), a complaint must plead "enough facts to state a
claim to relief that is plausible on its face." Id. at
570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d
929. "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted
unlawfully." Ashcroft v. Iqbal,___U.S.___, 129 S.Ct.
1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550
U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and
conclusions" are not enough, Twombly, 550 U.S. at 555,
127 S.Ct. at 1964-65, and a court  "'is not bound to
accept as true a legal conclusion couched as a factual
allegation.'" Id., 127 S.Ct. at 1965 (quoted case
omitted).

In resolving the motion to dismiss, we thus
"conduct a two-part analysis." Fowler, supra, 578 F.3d
at 210. First, we separate the factual elements from the
legal elements and disregard the legal conclusions. Id.
at 210-11.  Second, we "determine whether the facts

8

alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In addition, because McLean complains about "prison conditions," the screening provisions, 28 U.S.C. § 1915(e), of the PLRA apply,[7] given that McLean was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its

_____

7. Section 1915(e)(2), which was created by § 804(a)(5) of the PLRA, provides:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at anytime if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed. Appx. 183 (3d Cir.2008).

## Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.
Anderson, 477 U.S. at 257; Brenner v. Local 514, United
Brotherhood of Carpenters and Joiners of America, 927
F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine
issue of material fact, the court must view the facts
and all reasonable inferences in favor of the nonmoving
party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993);
Clement v. Consolidated Rail Corporation, 963 F.2d 599,
600 (3d Cir. 1992); White v. Westinghouse Electric
Company, 862 F.2d 56, 59 (3d Cir. 1988).  In order to
avoid summary judgment, however, the nonmoving party may
not rest on the unsubstantiated allegations of his or
her pleadings.  When the party seeking summary judgment
satisfies its burden under Rule 56 of identifying
evidence which demonstrates the absence of a genuine
issue of material fact, the nonmoving party is required
by Rule 56 to go beyond the pleadings with affidavits,
depositions, answers to interrogatories or the like in
order to demonstrate specific material facts which give

rise to a genuine issue.  <u>Celotex Corporation v.</u>

<u>Catrett</u>, 477 U.S. 317, 324 (1986).  The party opposing

the motion "must do more than simply show that there is

some metaphysical doubt as to the material facts."

<u>Matsushita Electric Industrial Co. v. Zenith Radio</u>, 475

U.S. 574, 586 (1986).  When Rule 56 shifts the burden of

production to the nonmoving party, that party must

produce evidence to show the existence of every element

essential to its case which it bears the burden of

proving at trial, for "a complete failure of proof

concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."

<u>Celotex</u>, 477 U.S. at 323.  <u>See</u> <u>Harter v. G.A.F. Corp.</u>,

967 F.2d 846, 851 (3d Cir. 1992).

**<u>Discussion</u>**

The FTCA provides a remedy in damages for the

simple negligence of employees of the United States to

protect federal inmates.  <u>United States v. Muniz</u>, 374

U.S. 150, 150 (1963).  In presenting such a claim, a

plaintiff must show: (1) that a duty was owed to him by

a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss.  Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd 306 F.2d 713 (3d Cir. 1962), cert. denied, 371 U.S. 923 (1962).

It is well-settled that a federal district court in considering a FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred.  28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987).  However, in cases involving federal prisoners, this court has recognized that the government's duty of care is one of ordinary diligence. See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443.  The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred.  Hosic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987).

13

Under Pennsylvania law a plaintiff is required
to show that the defendant's negligence was the
proximate cause of his injury by a preponderance of the
evidence.  <u>Baum v. United States</u>, 541 F. Supp. 1349,
1351 (M.D. Pa. 1982).  Furthermore, Pennsylvania law
defines proximate cause as causation which was a
substantial factor in bringing about the injury.  <u>Hamil
v. Bashline</u>, 481 Pa. 256, 265, 392 A.2d 1280, 1284
(1978).

The court is satisfied that McLean has
sufficiently stated a claim of negligent administration
of a PPD test. The administration of a PPD test by BOP
medical personnel is governed by BOP Clinical Practice
Guidelines and Program Statement, Number 6190.04,
Infectious Disease Management.  The guidelines in effect
in December 2011 provided that a skin test should
generally be performed where an inmate is a new BOP
inmate and the inmate only self-reports a prior positive
PPD test.  However, those inmates who have documentation
of prior positive skin tests while the inmates were

14

incarcerated within the BOP or a severe reaction to a skin test should not be retested.   <u>See</u> Management of Tuberculosis, Federal Bureau of Prisons, Clinical Practice Guidelines, January 2010, http://citeseerx. ist.psu.edu/viewdoc/summary?doi=10.1.1.170.8087;http://c iteseerx.ist.psu.edu/viewdoc/download;jsessionid=0A60F7D 96535DC8A43F29C7E1F3B2049?doi=10.1.1.170.8087&rep=rep1&t ype=pdf (Last accessed February 8, 2016).[8]   Program

_____

8. Appendix 2 to the 2010 guidelines succinctly summarizes when skin tests should be performed.  First, with respect to tuberculosis skin test negative inmates they should be tested (1) upon incarceration with the BOP, (2) annually thereafter, (3) when suspected of having TB, and (4) as part of a tuberculosis contact investigation.  With respect to inmates who had a prior positive skin test, a new skin test should be performed on all new intakes to the BOP regardless of an inmate's reported history of prior positive tuberculosis skin tests "with the following exceptions: prior documentation of a positive TST while the inmate was incarcerated within the BOP; history of a severe reaction to a TST, e.g., swollen, blistering, (vesiculated) reaction; credible history for latent TB infection."  The guidelines reissued in October 2015, reiterate the 2011 guidelines and state that "[t]he TST is an approved method for diagnosing [tuberculosis] infection in persons who do not have TB disease."  In addition the 2015 guidelines state that "[t]uberculin skin testing should be performed annually unless there is documentation of a prior TST or history of active TB

(continued...)

Statement Number 6190.04 states in relevant part that
"Tuberculin skin test screening with the PPD (purified
protein derivative) skin test must be initiated within
two calendar days of initial incarceration to screen for
both latent TB infection and TB disease unless a
previously positive tuberculosis skin test has been
adequately documented.  It is recommended that the TB
skin test be placed during intake screening. Inmates
with a documented previously positive tuberculosis skin
test, should not be retested, but should be screened for
active TB by chest radiograph." Doc. 57, Plaintiff's
Exhibits, at 13. In light of the Clinical Practice
Guidelines and Program Statement 6190.04 which McLean
raised in his brief in opposition to the motion to
dismiss and the other allegations relating to a
temporally close allergic reaction to the PPD test and
subsequent scarring, McLean has sufficiently alleged a

_____

8.   (...continued)
disease." Management of Tuberculosis, Federal Bureau of
Prisons Clinical Practice Guidelines, October 2015,at
3-4, http://www.bop.gov/resources/pdfs/TB_CPG.pdf
(Last accessed February 8, 2016).

duty of care, a breach of the duty of care and proximate causation.

The first argument raised by the United States is more of a procedural challenge to McLean's amended complaint.  The United States contends in order for McLean to proceed with this action he was required pursuant to Pennsylvania Rule of Civil Procedure 1042.3 to filed a certificate of merit within 60 days of the filing of the complaint.  Under Rule 1042.3(a) a party filing an action based upon an allegation of professional negligence is required to file a certificate of merit stating that

> (1) an appropriate licensed professional has has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was the cause in bringing about harm, or
>
> *     *     *     *     *     *     *     *     *     *     *
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

The United States contends that this requirement was not
satisfied by McLean. Although McLean failed to file a
certificate of merit within the 60 days, the court is
satisfied that McLean's failure is not fatal to his
action.  McLean has pointed out that under Rule
1042.3(d) his failure can be justified by a "reasonable
excuse."

First, in opposing the motion to dismiss, McLean
has argued that his failure should be excused because,
as a federal prisoner, he did not have access to
Pennsylvania legal materials and did not have sufficient
information regarding the requirement.  In his brief
McLean specifically states that he did not have access
to Pennsylvania law and that he "ask[ed] Defendant for
the law and was denied the access to Pa. State law."[9]
Doc. 55, Plaintiff's Brief, at 4.  Second, McLean has
argued that he has a medical opinion indicating that
retesting was inappropriate.  McLean at one point

_____

9.  The docket reveals that McLean was transferred to
FCI-Pekin in Illinois on January 23, 2015. Doc. 15.

18

appears to have been incarcerated in Wise County Jail,
located in Texas. Doc. 55, at 7.  The Jail Administrator
notified McLean that he would have to undergo a TB skin
test. Id.  In response to that notice McLean submitted a
letter from Thomas E. Steffen, M.D., dated November 23,
1993, which states in toto as follows: "I saw William
McLean in my office on November 22, 1993. He stated that
he has had Tuberculosis. Mr. McLean does not need a TB
line test but should have a chest x-ray as a follow up
procedure." Id.  Third, even though McLean has the
medical opinion from Dr. Steffen, McLean further argues
that expert testimony is not necessary for the
prosecution of the claim. In essence McLean contends
that the Clinical Practice Guidelines and the Program
Statement adopted by the BOP set the standard of care
and the allergic reaction shortly after the skin test
establishes causation.

Also, in opposing the motion for summary
judgment, McLean refers to unsworn declarations under
penalty of perjury from other inmates, who state that

19

they observed a lesion on McLean's forearm shortly after the PPD test was performed. Doc. 23, Exhibits, at 23-25.[10]  McLean further provides two BOP medical records - orders for chest x-rays - dated January 15, 1998, and March 2, 2001, indicating that he had a positive PPD test, which is the reason the chest x-rays were ordered. Id.

With respect to the failure to file the certificate of merit, the court is satisfied that McLean has provided a reasonable excuse which the United States has not contested. Walsh v. Console. Design & Eng'g, Inc., No. Civ. A. 05-2001, 2007 WL 2844829, at *5 (E.D.Pa. Sept. 28, 2007)("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable excuse or legitimate excuse."). Furthermore, in responding to the motion to dismiss and/or for

---

10.  These exhibits accompanied McLean's amended complaint.

summary judgment McLean in essence has attempted to file a certificate under subsections 1 and 3 of the rule. <u>See Scaramuzza v. Sciolla</u>, 345 F.Supp.2d 508 (E.D. Pa. 2004)(plaintiff's noncompliance excused because a valid certificate was provided in response to the motion).[11]

Although in a medical malpractice case, expert testimony is generally required, this case appears to be one of the rare cases where expert testimony may not be necessary because of the promulgation by the BOP of the Clinical Practice Guidelines and Program Statement 6190.04 as well as the evidence of a temporally close allergic reaction. <u>Cf</u>. <u>Simpson v. Bureau of Prisons</u>, No. 3:CV-02-2313, 2005 WL 2387631, *5 (M.D.Pa. Sept. 28, 2005)("Because absence of due care and causation are not so obvious as to allow a fact finder to decide this case without expert opinions, Defendant is entitled to summary judgment."). The court is satisfied that McLean

---

11. The court is mindful of the principle that pro se pleadings must be liberally construed.  <u>See Haines v. Kerner</u>, 404 U.S. 519 (1972).

has sufficiently complied with Rule 1042.3 and will deny
the United States' motion to dismiss and construe
McLean's response to the motion to dismiss and/or for
summary judgment as his certificate of merit.

The United States next argues that summary
judgment should be entered in its favor as the
undisputed record demonstrates the United States was not
negligent in treating McLean.  The court finds no merit
in this argument.  First, the issue actually is the
administration of a test and not treatment for a medical
condition.  The United States contends that Dr. Mace-
Leibson's declaration (Doc. 30-1, at 3-6) and McLean's
medical records demonstrate that McLean was
appropriately provided a TB test when he arrived at FCI-
Schuylkill on December 5, 2011.  However, a review of
Dr. Mace-Leibson's declaration and McLean's medical
records begs the question.[12] The declaration does not

_____

12.  Dr. Mace-Leibson states that "there was nothing in
[McLean's] medical record noting that he had any recent
TB clearance testing, including a purified protein
derivative (PPD) skin test for TB.  An 'Inmate Intra-
(continued...)

address the Clinical Practice Guidelines and Program

Statement 6190.04 adopted by the BOP as well as 28

C.F.R. § 28 C.F.R. § 549.12(b)(4) relating to when an

involuntary test can be performed. Furthermore, the

absence of a recorded injury in McLean's medical records

is contravened by the declarations from the other

inmates who observed a lesion on McLean's left forearm

and corroborate McLean's allegations about being told

that if he refused he would be immediately involuntarily

tested.  Most significantly, even the record that Dr.

Mace-Leibson concedes that EMT Blaschak had available on

---

12.  (...continued)
System Transfer' form was completed by FCI Phoenix
medical staff on November 29, 2011, prior to
Plaintiff's transfer to FCI Schuylkill. That form
indicated Plaintiff's last PPD skin test was January 1,
1994 . . . Therefore, since the last time Plaintiff had
any TB screening was almost 6 years (sic) prior, the
EMT conducting the health screening of the inmates
arriving at FCI Schuylkill on December 5, 2011,
provided him with the PPD skin test to his left
forearm."  Doc. 30-1, at 4. The medical record referred
to by Dr. Mace-Leibson indicates that McLean had a
positive PPD test on January 1, 1994. The result was 22
mm of induration. 10 mm or above is considered a
positive test.  See Clinical Practice Guidelines
adopted by the BOP.

December 5, 2011, reveals that McLean had a prior

positive PPD test. Doc. 30-1, at 23.[13]  Furthermore, the

results of the December 5, 2011, test turned out to be

positive.[12] <u>Id.</u> at 26.

Dr. Mace-Leibson's affidavit is troubling in one

other respect.  She indicates that she evaluated and

examined McLean on December 12, 2011, and during that

encounter McLean never complained about the

administration of the PPD test.  However, McLean has

submitted a grievance form dated December 10 2011, which

he allegedly delivered to Dr. Mace-Leibson.  In that

form McLean states: "I talked to Mr. McKinney. He told

me that you and he were well aware I 'acted-up' on the

EMT (T. Blaschak) over the T.B.test.  My arm is already

as big as a Galuff-Ball (sic) cracking bleeding puss,

red lines, etc. (sic) She should of (sic) called you

---

13. McLean's medical record states that he had a PPD
test on January 1, 1994.  The induration was 25mm which
is indicative of a positive test. McLean's last chest
x-ray was on December 18, 2005.  Furthermore, the
record states that TB follow-up was not recommended.

12. The induration was 20 mm.

24

like I asked, no mater the 'standing order' she had from you & Mr. Mckinney to give everyone a TB Test. She hurt and assaulted me on your & McKinneys (sic) order so say Mr. McKinney. The EMT should of (sic) called you! . . . I want hur (sic) fired before she kills another."[13]  Doc. 20, Amended Complaint, attachments, at 27.  Dr. Mace-Leibson responded to this grievance on December 12, 2011 by merely stating as follows: "This is not something I have any control over."  Id.  McLean in the grievance form clearly was complaining about the TB skin test. However, Dr. Mace-Leibson fails to mention that fact.

---

[13]. There is an allegation in the amended complaint that EMT Blaschak was responsible for the death of an inmate and that her employment was terminated.

25

Under the circumstances presented the court finds that there are triable issues of material facts, including issues of credibility, and the United States is not entitled to summary judgment.

An appropriate order will be entered.


 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: February 11, 2016

26